UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Criminal No. 23-173 (ADM/DLM)

UNITED STATES OF AMERICA,

          Plaintiff,

    v.

JACKIE RAHM LITTLE,

          Defendant.

**UNITED STATES' RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

The United States of America, by and through its attorneys, Andrew M. Luger, United States Attorney for the District of Minnesota, and Evan B. Gilead, Assistant United States Attorney, hereby files its response in opposition to Defendant's Motion to Dismiss (Dkt. No. 83).

On March 26, 2024, Defendant Jackie Rahm Little filed a motion to dismiss for violations of the Insanity Defense Reform Act (IDRA) and due process resulting from delays in transporting and obtaining competency restoration. The Court should deny Little's motion because dismissal is not an appropriate remedy for a delay of his competency-restoration evaluation. The United States remains focused on providing Little with the medical treatment he needs and protecting the public against his future crimes. Dismissal, however, is a severe sanction, unwarranted, and fails to accomplish either goal.

Little is slated to begin hospitalization and competency restoration in June 2024. While the United States acknowledges an approximate seven-month delay between this Court's Order and Little's anticipated hospitalization to restore competency, that delay does not violate any statutory or due process rights.

## I. **Procedural Background.**

On May 3, 2023, Little was charged by Indictment with Arson, in violation of 18 U.S.C. § 844(i), and Damage to Religious Property, in violation of 18 U.S.C. § 247(a)(1) and (d)(3). Dkt. No. 9. The facts underlying these serious charges implicate Little's desire to interfere with an entire community's right to freely practice its religion. As summarized in a Complaint that preceded the Indictment (23-mj-365 (ECW)—Dkt. No. 5), on April 23, 2023, at approximately 7:00 p.m., Little started a fire in the bathroom of the Masjid Omar Islamic Center. On April 24, 2023, just before 7:00 p.m., Little was captured on surveillance video entering the Masjid Al-Rahma. Shortly thereafter, a fire broke out on the third floor of the mosque, and the building was evacuated.

On June 26, 2023, Little, through his attorney, filed a motion to determine competency. Dkt. No. 24. On July 6, 2023, the Government filed a motion for psychiatric evaluation. Dkt. No. 33. On July 19, 2023, this Court filed an amended Order granting Little and the Government's motions (Dkt.

Nos. 24, 33). Dkt. No. 38. On October 24, 2023, the Bureau of Prisons (BOP) provided a copy of Little's Psychological Evaluation to the Court and parties. Dkt. No. 47.

The Court held a competency hearing on November 8, 2023, and issued a written order the same day. Dkt. No. 51. At the hearing, the parties stipulated to the admissibility of the available psychological reports found at Dkt. Nos. 25 and 47. Based on the record, the Court found that, "by a preponderance of the evidence that Mr. Little is presently suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature of consequences of the proceedings against him *and* unable to assist properly in his defense." Dkt. No. 51 (emphasis in original). Therefore, the Court ordered, pursuant to 18 U.S.C. § 4241(d), Little committed to the custody of the Attorney General of the United States for "treatment in a suitable facility for such a reasonable period, not to exceed 120 days, as is necessary to determine whether there is a substantial probability that in the foreseeable future Mr. Little will attain the capacity to permit the proceedings to go forward." *Id.* at 2.

Little is scheduled to begin hospitalization to retore his competency in June of this year at FMC Butner. The delay between the Court's November 8th competency order and Little's anticipated hospitalization is the result of a nationwide shortage of bed space and care providers within the BOP at

3

hospital-setting facilities capable of addressing competency restoration. Despite significant and ongoing efforts by the BOP to address these issues, delays remain a significant issue.

The United States has obtained a Declaration from Dr. Dia Boutwell, Chief of the Psychological Evaluations Section for the BOP, in an effort to provide the Court with information regarding the current circumstances surrounding competency restoration, otherwise known as "study orders." *See* Gov. Ex. 1. Dr. Boutwell's duties include oversight of the BOP's forensic evaluation program and coordination of the pipeline of individuals designated for both outpatient and inpatient forensic studies. *Id.* ¶¶ 1, 2.

According to Dr. Boutwell, inmate movement for study orders under a § 4241(d) commitment is a multifaceted process involving interagency collaboration. *Id.* ¶ 4. After the order makes its way from a court to BOP, the defendant undergoes an initial evaluation for a suitable facility, which considers the individual's medial acuity, type of evaluation, and security level. *Id.* Once an individual is designated, then USMS must submit a movement request. *Id.*

Historically, there were three primary facilities for males within the BOP which provided § 4241(d) competency restoration services—USMCFP Springfield, FMC Butner, or FMC Devens. *Id.* ¶ 5. Recently, BOP has opened specialized competency restoration treatment units at FMC Lexington and

4

MCC Chicago. *Id.* ¶ 6. Each facility is "suitable" for purposes of § 4241(d). *Id.*
Due to limited staffing, resources, and bedspace, there are significant wait
times for beds in these facilities. *Id.* Each has a specific number of intakes per
month, necessarily limited by each facility's resources, and allotted to
individuals based on the date of the court order. *Id.* ¶¶ 6-11. Capacity is also
limited by staffing—such as psychologists, psychiatrists, nurses, social
workers, and correctional staff. *Id.* ¶ 6. Adequate personnel are necessary to
protect staff and inmates, as well as provide care and monitoring to the
inmates who require restoration services. *Id.*

As part of her declaration, Dr. Boutwell reviewed Little's case. *Id.* ¶¶ 19-
23. Little was initially designated to FMC Buter due to his presentation and
diagnosis. *Id.* ¶ 20. In that determination, Little was also considered for FMC
Lexington and MCC Chicago. *Id.* However, BOP determined those
designations were inappropriate based on his condition. Additionally, Little
was considered for FMC Devens and USMCFP Springfield. *Id.* However, Little
could be treated most quickly at FMC Butner. *Id.* The likely timeframe for
Little's admission to the FMC Butner is approximately June 2024. *Id.* ¶ 21.

In a request from the Government, Little's case was re-reviewed to see if
his status arrival date could be moved up or if he could be re-designated to
another facility. *Id.* ¶¶ 23-23. Based on his presentation, diagnosis, and safety
considerations, BOP determined that Little's designation should remain FMC

Butner. *Id.* Accordingly, Little's timetable for admission into FMC Butner remains slated for June 2024.

## II.   __ARGUMENT.__[1]

### A.   *Applicable Law.*

Pursuant to 18 U.S.C. § 4241(a), at "any time after the commencement of a prosecution . . . and prior to the sentencing of the defendant," a party may file a motion for a hearing to determine the defendant's mental competency. The Court is required to grant the motion, or order a hearing on its own motion, if there is "reasonable cause" to believe the defendant is experiencing a mental issue which renders him unable to "understand the nature and consequences of the proceedings . . . or to assist properly in his defense." 18 U.S.C. § 4241(a). Before the hearing, the Court may order a "psychiatric or psychological examination of the defendant" and a report to be filed with the Court. 18 U.S.C. § 4241(b).

After the hearing, if the Court finds by a preponderance of the evidence that the defendant is "suffering from a mental disease or defect" that renders him unable to "understand the nature and consequences of the

---

[1]   In his Motion to Dismiss, Little portends his intention to file a subsequent motion to dismiss pursuant to the Speedy Trial Act in the event this Court deny his motion. Dkt. No. 83 at 14-15. Such arguments are not before the Court and the Government's response does not address such arguments yet to be made.

proceedings . . . or to assist properly in his defense," the Court is required to "commit the defendant to the custody of the Attorney General." 18 U.S.C. § 4241(d). The Attorney General, then, is required to "hospitalize the defendant for treatment in a suitable facility" for "a reasonable period of time, not to exceed four months, as is necessary to determine whether there is a substantial probability that in the foreseeable future he will attain the capacity to permit the proceedings to go forward[.]" 18 U.S.C. § 4241(d)(1). An "additional reasonable period of time" is authorized until the defendant's mental condition is improved, if the Court "finds there is a substantial probability that within such an additional period of time he will attain the capacity to permit the proceedings to go forward" or "the pending charges against him are disposed of according to law[.]" 18 U.S.C. § 4241(d)(2)(A) and (B).

As several circuit courts have found, the four-month limit identified in § 4241(d)(1) applies to the hospitalization period to restore competency, not to the pre-hospitalization wait to begin that process. *See United States v. Magassouba,* 544 F.3d 387, 408 (2d Cir. 2008); *see also United States v. Donofrio*, 896 F.2d 1301, 1303 (11th Cir. 1990); *United States v. Donnelly*, 41 F.4th 1102, 1105 (9th Cir. 2022). The Ninth Circuit has held that "the text of the statute makes clear that the four-month time limit applies only to the period of hospitalization, and thus begins to run when the defendant has been hospitalized." *Donnelly*, 41 F. 4th at 1105. Similarly, in *Magassouba*, the

7

Second Circuit interpreted this four-month limit to apply only to the hospitalization period: "[W]e construe § 4241(d)(1) to impose a four-month limit only on the Attorney General's authority to hold an incompetent defendant in custodial hospitalization for the purpose of determining the probability of his regaining competency." 544 F.3d 387, 408 (2d Cir. 2008). The court explained that, after those four months of hospitalization have passed (assuming the district court has not extended the time), "the Attorney General . . . lacks authority to hold the defendant in further custodial hospitalization under § 4241(d). In such circumstances, the Attorney General must restore a defendant to the status quo ante his § 4241(d)(1) confinement." *Id.* Similarly, several district courts have found that the fourth-month limit in § 4142(d) applies to the Attorney General's authority to hold a defendant and, therefore, does not begin until a defendant is moved to a treatment facility. *See e.g., United States v. Jones*, 2020 WL 7127321 at *2 (D. Mont. Dec. 4, 2020).

Separate from the statutory question, there are also Due Process implications with respect to competency proceedings. In *Jackson v. Indiana*, 406 U.S. 715 (1972), the defendant was "a mentally defective deaf mute with the mental level of a pre-school child" who could "not read, write, or otherwise communicate except through limited sign language." 406 U.S. at 717. The lower court proceeded, in accordance with Indiana law, with a competency determination. *Id.* at 717-18. Jackson was determined to be incompetent, and

it was doubtful he had sufficient intelligence to develop the necessary communication skills to assist in his defense. *Id.* at 719. The Court found that Jackson lacked the mental competency to stand trial and ordered him committed until he was determined to be sane. *Id.* There was nothing in the record that pointed to any possibility that Jackson's condition could be remedied. *Id.* at 726. Jackson challenged the commitment as amounting to a "life sentence" without due process. *Id.* at 719. When the case was decided by the Supreme Court, Jackson had "been confined for three and one-half years on a record that sufficiently establishe[d] the lack of a substantial probability that he w[ould] ever be able to participate fully in a trial." *Id.* at 738.

The Supreme Court found that Jackson's commitment was "permanent in practical effect." *Id.* at 727. The Court held that the "indefinite commitment of a criminal defendant solely on account of his incompetency to stand trial does not square with the . . . guarantee of due process." *Id.* at 731. The Court's focus was on the possibility of "indefinite commitment on the ground of incompetency alone." *Id.* at 733. The Court stated that, "[w]ithout a finding of dangerousness," a criminal defendant committed due to mental incompetency can only be held for a reasonable period of time. *Id.* "We hold, consequently, that a person charged . . . with a criminal offense who is committed solely on account of his incapacity to proceed to trial cannot be held more than the reasonable period of time necessary to determine whether there is a

substantial probability that he will attain that capacity in the foreseeable future." *Id.* at 738.

Nevertheless, the Supreme Court did not dismiss the charges, despite Jackson's commitment of over three years; instead, it remanded the matter to the Indiana courts for further proceedings. *Id.* at 740. The Court stated that dismissal of charges against an incompetent defendant had usually been addressed on the grounds of the Sixth Amendment right to a speedy trial, or "the denial of due process inherent in holding pending criminal charges indefinitely over the head of one who will never have a chance to prove his innocence." *Id.*

Although the Eighth Circuit has not addressed the question in this precise context, in *United States v. Ecker*, the Court found that § 4241 provides "flexible time requirements with respect to the evaluation of an accused's competency to stand trial." 30 F.3d 966, 969 (8th Cir. 1994). In *Ecker*, over the course of nearly three and one-half years, Ecker's competency was evaluated at least seven times, and he was transferred to multiple facilities to complete the evaluations. *Id.* at 968. Ultimately, he was found incompetent, and after an evaluation and finding that Ecker was mentally ill and dangerous, he was civilly committed pursuant to § 4246. *Id.* Ecker appealed his civil commitment arguing that the unreasonable length of the evaluation period—the period set forth in § 4241—made the commitment proceeding unlawful and unwarranted.

10

*Id.* at 969. The court found that neither the state courts, nor the various Federal institutions involved, acted unreasonably, particularly given that there was no evidence that the government was ignoring the statute or its procedures. *Id.* Further, the court held that because Ecker's total time of confinement for purposes of competency determination was far less than his maximum possible sentence, no due process violation occurred despite the long delay. *Id.*

        B.    <u>There is No Statutory Violation Under § 4241</u>.

This Court should follow great weight of authority and find that the four-month period in § 4241(d)(1) applies *only* to the period of actual hospitalization. Subsection (d)(1) is the only part of § 4241 that contains a time limitation. Based on the plain meaning of the text, the four-month limitation only applies to the period "necessary to determine whether there is a substantial probability that in the foreseeable future [a defendant will regain competency]." *Id.* The four-month cap does not apply pre-hospitalization.

In *United States v. Donnelly*, the Ninth Circuit considered this precise question and determined that the four-month limitation in § 4241 only applies to the actual period of hospitalization. 41 F.4th at 1105. Similarly, in *United States v. Donofrio*, the Eleventh Circuit held that § 4241(d)(1) "limits confinement to four months" to determine the probability that in the foreseeable future the defendant will regain competency, "whether more time

would be reasonable or not." 896 F.2d 1301, 1303 (11th Cir. 1990). "Any additional period of confinement depends upon the court's finding there is a probability that within the additional time he will attain capacity to permit trial [pursuant to] 18 U.S.C. § 4241(d)(2)(A)." *Id.* The Eleventh Circuit's interpretation relies on the clear meaning of the statute that the four-month limitation applies to the maximum period of time to determine the probability of regaining competency and does not begin until the defendant is transferred to a treatment facility for evaluation. As noted above, the Second Circuit reached the same conclusion in *United States v. Magassouba,* 544 F.3d at 408. Although the question before the Second Circuit was whether an order of further commitment under § 4241(d)(2) was required before the expiration of the four-month limit on the evaluation period under § 4241(d)(1), the Second Circuit's interpretation, like the Ninth's and Eleventh Circuit's, places the four-month restriction on the evaluation period, not on a pre-hospitalization period or on the total amount of time that a defendant can be committed to a treatment facility.

Additionally, other judges in this District have considered claims like Little's and found that § 4241 was not implicated prior to a defendant's hospitalization to restore competency. *See e.g., United States v. Batton-Harris*, 22-cr-00346-ADM-TNL, Doc. 34, (January 5, 2024) (Magistrate Judge Leung rejected a motion to dismiss an indictment based on alleged delays and held,

12

"The text of the statute [§ 4241] is plain and clear. The text clearly provides that the four-month period applies to the time Defendant is hospitalized in a treatment facility and not when Defendant is committed to the custody of the Attorney General prior to being hospitalized") (collecting cases).[2]

This Court should reach the same conclusion based on a plain reading of § 4241. The four-month period provided for in § 4241 does not begin until a defendant's competency restoration has begun. The statute does not address or place any restrictions on the pre-hospitalization period. Indeed, the November 8 competency order in this case tracks the statute's four-month evaluation period and commits the defendant to a "suitable facility for such a reasonable period, not to exceed 120 days, as is necessary to determine whether there is a substantial probability that in the foreseeable future Mr. Little will attain the capacity to permit the proceedings to go forward." Dkt. 51, at 2. Like the statute, the order does not address the length of time necessary to transport the defendant to a hospital setting to begin the restoration process. As a result, there was no statutory violation and no violation of this Court's November 8 order. The defendant's motion should be dismissed.

---

[2]     Because Magistrate Judge Leung's Report and Recommendation in *United States v. Batton-Harris*, 22-cr-00346 (ADM/TNL) is filed under seal, the Government will make a copy available to the Court and Little's counsel.

C.     _There Is No Due Process Violation_.

Nor has there been a Due Process violation. First, the administrative delay in placing Little in a suitable facility for mental competency restoration evaluation will likely occur in June 2024, an approximate seven-month timeframe—much less time than the three and one-half years at issue in _Jackson_.

Second, the delay here does not rise to indefinite detention; it is a result of the strain on BOP resources required to conduct 18 U.S.C. § 4241(d)(1) evaluations.  As explained in the attached declaration from the BOP, the capacity of the mental health units is limited by the number of medical providers and staff, who are necessary to care for and monitor the inmates. Due to the demand for competency restoration, coupled with limited bed space and the loss of several providers at the BOP medical centers, the wait time for admission to the inpatient competency restoration programs is currently approximately six months.  Ex. 1, at ¶ 6.

Beds at the facilities are assigned based on the date of the original court order.  While it would be ideal if there were no delays in transporting a defendant for competency restoration, the delay here is not unreasonable and certainly is not the result of any bad faith. As the attached declaration bears out, the BOP is instituting a number of changes and undertaking a number of steps to decrease the wait time. For instance, to address the increased demand

14

for competency restoration, the BOP added two additional facilities to provide care or treatment for restoration. Ex. 1, at ¶ 6.

Even so, there are a number of factors outside BOP's control that can disrupt the intake process. As Dr. Boutwell explains in her declaration, a number of events can disrupt the first-come, first-served pipeline. *Id.*at ¶ 7. "For example, a court-ordered self-surrender or a psychiatric emergency that cannot be managed at another facility, can 'bump' everyone on the pipeline back because of the pressing nature of an emergency or self-surrender." *Id.* Nevertheless, the delay that results from such disruptions is the pipeline to treatment is not the sort of indefinite commitment that was at issue in *Jackson*.

In addition, staffing shortages are a real concern for BOP. As Dr. Boutwell explains, a suitable facility within the meaning of § 4241(d) requires "not only a forensic psychologist, but also psychiatry, social work, and treatment staff available to assist in medicating and treating the person in the event he is committed to the custody of the Attorney General." Ex. 1, at ¶ 16. This is so because competency restoration is a labor-intensive endeavor involving a multi-disciplinary approach. *Id.* at ¶¶ 17-18. To address BOP's staffing levels necessary to meet this need, the BOP has recruited additional forensic staff, offered specialty-rate pay, and has provided bonuses to attract and retain BOP employees. *Id.* at ¶ 14. Thus, this case does not involve a

governmental agency standing idly by while backlogs continue to increase. Instead, the BOP is actively working to decrease wait times. Far from detaining defendants indefinitely, BOP is working to improve the process to decrease its backlog.

Finally, under the rationale in *Ecker*, because Little's detention has not exceeded the statutory maximum sentence—here, up to twenty years in prison—Due Process has not been violated. In *Donnelly*, the Ninth Circuit held that "[a]lthough Congress did not provide a specific time limit for a pre-hospitalization commitment period, *Jackson* requires the duration of any such commitment to 'bear some reasonable relation' to its purpose." 41 F.4th at 1106 (quoting *Jackson*). It held that, "[t]o determine the permitted length of the pre-hospitalization commitment period . . . we must ask what purpose that period serves." *Id*. The Ninth Circuit held that six to eight months of pre-hospitalization delay was unreasonable without engaging in any critical analysis as to the cause of the delay.

Here, Dr. Boutwell has explained the issues facing the BOP, as well as the significant steps the BOP has taken to address them and to decrease pre-hospitalization delay. She also explained why the defendant specifically must await placement at FMC Butner. Ex. 1 at ¶¶ 20-24. "No one's interests—not the parties', not the court's, and not the public's—are well served by encouraging undue haste in § 4241(d)(1) evaluations." *Magassouba*, 544 F.3d

at 408. In § 4241(d), Congress gave the Attorney General four months to evaluate and examine incompetent defendants to determine whether they can be restored; reasonable delays not caused by neglect or bad faith in delivering defendants to that examination do not violate the statute or due process.

D. _Even if There Was a Due Process Violation, Dismissal Is Not the Appropriate Remedy_.

Even where courts have found a due process violation, nearly all of them have concluded that dismissal is not an appropriate first step. *See, e.g.*, *United States v. Berard*, 671 F. Supp. 3d 107, 117 (D.N.H 2023) (canvassing the relevant authorities). *But see United States v. Leusogi*, No. 2:21-CR-32, 2022 WL 11154688 (D. Utah Oct. 19, 2022). The district court in *Berard* explained that "[u]nlike the Speedy Trial Act, the competency statute provides no basis to dismiss the indictment. And, '[d]ismissal of an indictment on due process grounds is appropriate only in cases of flagrant prosecutorial misconduct or when government conduct is so grossly shocking and outrageous that it violates the universal sense of justice. *Id.* at 116 (cleaned up). Instead, some courts have ordered the BOP to transfer the defendant by a particular date. *See e.g.*, *id.* at 117 ("Most courts to address the government's now-common failures in timely placing committed defendants in suitable medical facilities have found that the appropriate remedy is a directive that such defendants be placed in a facility immediately or within a certain, short period of time. In

17

these circumstances, only after the government has failed to comply with such an order do courts entertain dismissal of the indictment."); *United States v. Wazny*, No. 21-CR-247, 2022 WL 17363048 (M.D. Pa. Dec. 1, 2022) (ordering the Government to transfer the defendant to a suitable facility within 30 days, after a six-month delay).

Given Little's impending June 2024 date, the Government does not recommend such an order because doing so would disrupt the pipeline further. Additionally, it is not clear that courts have the authority for such an order.[3]

All told, the defendant's motion should be denied. Even if a due process violation were found, dismissing this case would be an extreme sanction, especially where the delay cannot be attributed to any government misconduct.

---

[3] For example, in *United States v. Lara*, No. 21-cr-01930-MLG, 2023 WL 3168646 (D.N.M. April 28, 2023), the court found a due process violation. The Court did not dismiss the case. Instead, the court ordered the BOP to admit Lara to FMC Butner within 7 days. In doing so, the court recognized that there was no statutory authority for its order and stated that it relied instead on "decisional authority." *Id.* at *6.

## **CONCLUSION**

Based on the foregoing, Little's Motion to Dismiss should be denied.

Dated: April 1, 2024                                Respectfully Submitted,

ANDREW M. LUGER
United States Attorney

*/s/ Evan B. Gilead*
BY: EVAN B. GILEAD
Assistant U.S. Attorney
Attorney ID No. 1601283 DC

19