UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| United States of America, | Case No. 23-cr-173(1) (ADM/DLM) |
| Plaintiff, | |
| v. | **ORDER AND** |
| | **REPORT AND** |
| Jackie Rahm Little, | **RECOMMENDATION** |
| Defendant. | |

This matter is before the Court on Jackie Little's Motion to Dismiss the Indictment. (Doc. 83.) The case has been referred to the undersigned United States Magistrate Judge for a Report and Recommendation pursuant to 28 U.S.C. § 636 and District of Minnesota Local Rule 72.1. For the reasons stated below, the Court recommends that Mr. Little's Motion to Dismiss the Indictment be denied.

## BACKGROUND

On May 4, 2023, the government charged Mr. Little by two-count indictment with Arson in violation of 18 U.S.C. § 844(i), and Damage to Religious Property in violation of 18 U.S.C. § 247(a)(1) and (d)(3). (*See generally* Doc. 9.) On June 26, 2023, Mr. Little's attorney filed a Motion for Order of Competency to Stand Trial asking the Court to "hold a hearing to determine [Mr. Little's] competency to stand trial." (Doc. 24 at 2.) The government responded stating that it did not object to Mr. Little's motion, but also requested that "the Court order a psychiatric or psychological examination of [Mr. Little] by the [g]overnment, with transfer by the Bureau of Prisons ("BOP") to a suitable BOP

facility for such evaluation to be conducted." (Docs. 32 at 2; 33 at 2.) On July 19, 2023, the Court issued an Amended Order for a Competency Evaluation to Determine Mr. Little's Competency to Stand Trial. (Doc. 38.) The Court received Mr. Little's Mental Competency Report on October 24, 2023. (Doc. 47.)

On November 8, 2023, the Court held an evidentiary hearing to determine Mr. Little's competency. (Doc. 50.) At the hearing, the parties stipulated to the admissibility of psychological reports and evaluations at Docket Numbers 25 and 47. (*Id.*) After the hearing, the Court issued an Order determining that

> [b]ased on the record before the Court, the evidence establishes by a preponderance of the evidence that Mr. Little is presently suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him and unable to assist properly in his defense.

(Doc. 51 at 1-2.) The Court therefore ruled that

> pursuant to 18 U.S.C. § 4241(d), Mr. Little is **COMMITTED** to the custody of the Attorney General. The Attorney General shall hospitalize Mr. Little for treatment in a suitable facility for such a reasonable period, not to exceed 120 days, as is necessary to determine whether there is a substantial probability that in the foreseeable future Mr. Little will attain the capacity to permit the proceedings to go forward.

(*Id.* at 2.)

Since the Court's Order was issued on November 8, 2023, Mr. Little has remained in custody at the Sherburne County Jail. (Doc. 83 at 1.) He has yet to be transferred to a BOP facility for determination of whether his competency to stand trial can be restored during "a reasonable period, not to exceed 120 days," or four months total, as the Court originally ordered based on 18 U.S.C. § 4241(d). (Doc. 51 at 2.) As a result, on March 26,

2

2024, Mr. Little moved to dismiss the indictment against him, noting that "over four months have passed since this Court's November 8, 2023 Order finding Mr. Little incompetent and committing him to the custody of the Attorney General," yet Mr. Little has not been transferred to a suitable facility for treatment. (Doc. 83 at 2.) On these facts, defense counsel argues that 18 U.S.C. § 4241(d)'s "four-month period has lapsed" and therefore "the Court must vacate the § 4241(d) commitment order, proceed on the finding that Mr. Little is—and will remain—incompetent to stand trial, dismiss the indictment, and release him." (*Id.*)

The government opposes Mr. Little's motion and represents to the Court that Mr. Little is "is slated to begin hospitalization and competency restoration in June 2024." (Doc. 90 at 2.) The government "acknowledges an approximate seven-month delay between this Court's Order and [Mr.] Little's anticipated hospitalization to restore competency" but asserts such a "delay does not violate any [of Mr. Little's] statutory or due process rights." (*Id.*) The government further contends that even if the Court were to find a violation, dismissal of the indictment is not the appropriate remedy because, according to the government, the delay between the Court's Competency Order and Mr. Little's projected hospitalization "is the result of a nationwide shortage of bed space and care providers" at BOP "hospital-setting facilities capable of addressing competency restoration," not bad faith or misconduct on the government's part. (*Id.* at 1, 3.)

3

# ANALYSIS

## I. MR. LITTLE'S MOTION TO DISMISS THE INDICTMENT SHOULD BE DENIED.

Mr. Little argues that the government's delay in transferring him to a suitable facility for hospitalization to restore competency violates statutory time constraints laid out in the Insanity Defense Reform Act ("IDRA") and his Due Process rights. He asserts that the "[g]overnment's authority to detain [him] for § 4241(d)'s four-month evaluation period ended on March 9, 2024." (Doc. 83 at 5.) Therefore, according to Mr. Little, "[a]bsent a finding under § 4241(d)(2)(A) that there is a 'substantial probability' of restoration, the statutory authority for the [g]overnment to hold Mr. Little has expired [and] . . . [h]e must be released, and the indictment [be] dismissed." (*Id*. at 5, 7.) But even if the Court were to find no statutory violation, Mr. Little contends that the delay is "constitutionally unreasonable" under *Jackson v. Indiana*,[1] and therefore violates his Due Process rights.

### A. The four-month evaluation period of 18 U.S.C. § 4241(d)(1) is triggered by hospitalization, not custody.

According to Mr. Little, under the IDRA, once a court finds a person presently incompetent to stand trial—as it has here concerning Mr. Little—then the court "shall commit the [person] to the custody of the Attorney General" for such a time "not to exceed four months." (Doc. 83 at 4 (citing 18 U.S.C. § 4241(d)(1)).) Mr. Little claims "[t]his is the longest timeframe contemplated by the IDRA." (*Id*.) And once the strict four-month period has expired, a court "may extend the evaluation period only 'if the court finds that

---

[1] 406 U.S. 715 (1972).

4

there is a substantial probability that within such additional period of time, [a person] will attain the capacity to permit the proceedings to go forward[.]'" (*Id.* (citing § 4241(d)(2)(A)).) But if at the end of the four-month period, a court is "unable to find that a substantial probability exists that the person will regain competency," then the government is permitted to "seek federal commitment if, and only if, (1) the individual is found dangerous as a result of a disability (which requires a number of prerequisite findings), and (2) suitable arrangements for custody and care in the individual's home state are not available." (*Id.* at 4-5 (citing 18 U.S.C. § 4246(a)).) Under Mr. Little's statutory interpretation, he should have been released from custody and the indictment against him dismissed on March 9, 2024, when his four-month term in the Attorney General's custody expired.

The government counters that the Court should follow the reasoning of several other circuits that have understood the four-month period "identified in § 4241(d) applies to the hospitalization period to restore competency, not to the pre-hospitalization wait to begin that process." (Doc. 90 at 7.) Because Mr. Little's period of hospitalization has yet to begin, the four-month period has not expired—nor even begun—and there has been no statutory violation.

The Court's "first step in interpreting a statute is to determine whether the language at issue has a plain and unambiguous meaning with regard to the particular dispute in the case." *Robinson v. Shell Oil Co.,* 519 U.S. 337, 340 (1997). To determine "[t]he plainness or ambiguity of statutory language," courts look "to the language itself, the specific context in which that language is used, and the broader context of the statute as a whole." *Id.* at

5

341 (citing *Est. of Cowart v. Nicklos Drilling Co.*, 505 U.S. 469, 477, 112 (1992)) (further citation omitted).

Section 4241(d) states if "the court finds . . . that [a person] is presently suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense," then the court must "commit the [person] to the custody of the Attorney General." 18. U.S.C. § 4241(d). In such a circumstance, the statute requires the Attorney General to "hospitalize the [person] for treatment in a suitable facility . . . for such a reasonable period of time, not to exceed four months, as is necessary to determine whether there is a substantial probability that in the foreseeable future he will attain the capacity to permit the proceedings to go forward." 18 U.S.C. 4241(d)(1).

The Eighth Circuit has not addressed the issue the Court faces here, but other circuits have taken up the question. Most persuasive is *United States v. Donnelly*, in which the Ninth Circuit concluded that the four-month time limit of § 4241(d) "applies only to the period of hospitalization, and thus begins to run when [a person] has been hospitalized." 41 F.4th 1102, 1105 (9th Cir. 2022) (per curiam). Decisions from the Second and Eleventh Circuits that have reached the same result. In *United States v. Magassouba*, the Second Circuit "construe[d] § 4241(d)(1) to impose a four-month limit only on the Attorney General's authority to hold an incompetent [person] in custodial hospitalization for the purpose of determining the probability of his regaining competency." 544 F.3d 387, 408 (2d Cir. 2008). Likewise, in *United States v. Donofrio*, the Eleventh Circuit determined "[t]he statute limits confinement to four months, whether more time would be reasonable

6

or not," but also made clear that confinement here meant *hospitalization*. 896 F.2d 1301, 1303 (11th Cir. 1990). So too has the Seventh Circuit interpreted § 4241(d)(1)'s four-month limit to apply to the period a person is admitted to a medical facility for their restoration of competency to stand trial. *See United States v. Shawar*, 865 F.2d 856, 861 (7th Cir. 1989) ("It is during the evaluation period that the Attorney General has up to four months to assess whether the defendant will regain competency to stand trial.")

Mr. Little bases his argument on *United States v. Carter*, a district court case from the District of Columbia. 583 F. Supp. 3d 94 (D.D.C. 2022). In *Carter*, the district court rejected the government's argument that the four-month period begins only when a person is hospitalized, holding that "the plain text of § 4241(d)(1) provides that the government 'shall hospitalize' an incompetent [person] as soon as the government obtains 'custody' over him." *Id.* at 100 (citing 18 U.S.C. § 4241(d)(1)).

Although *Carter* supports Mr. Little's position, this single district court case is not enough to persuade this Court to adopt Mr. Little's interpretation of § 4241(d)(1). Instead, this Court follows the Ninth Circuit's interpretation outlined in *Donnelly*. As the *Donnelly* court explained, § 4241 "establishes a three-step process when a [person's] competency to stand trial is questioned." 41 F.4th at 1104. Within this three-step process, the statute "imposes two mandatory duties following an incompetency finding." *Id.* at 1105. First, "the district court 'shall commit the [person] to the custody of the Attorney General.'" *Id.* (quoting § 4241(d)). Second, "the Attorney General shall hospitalize the [person] for treatment in a suitable facility . . . for such a reasonable period of time, not to exceed four months." *Id.* (quoting § 4241(d)(1)). Here, the statute's language is plain and unambiguous:

7

the four-month limit applies to a person's period of *hospitalization*, not simply custody. Courts throughout the country have come to the same conclusion. *See United States v. Lara*, 671 F. Supp. 3d 1257, 1261 (D.N.M. 2023) ("This language is specific and expressly ties the stated timeframe (four months) to the period of *hospitalization*, not the period [a person] spends in the custody of the Attorney General before admittance to a [BOP] facility."); *United States v. Castrellon*, No. 22-cr-112 (CMA/GPG), 2023 WL 2330688, at *3 (D. Colo. Mar. 1, 2023) (agreeing with *Donnelly* and *Magassouba* "that it is only upon the hospitalization that the four-month period begins to run"), *R. & R. adopted in part*, 2023 WL 9957097 (D. Colo. May 12, 2023).

Based on § 4241(d)(1)'s plain and unambiguous language, the Court finds that the four-month statutory limitations period refers to the timeframe a person is hospitalized and does not apply while a person is awaiting transfer to the appropriate medical facility. Because Mr. Little's period of hospitalization has yet to begin, the Court recommends finding that the delay in transferring Mr. Little to a suitable facility for competency restoration, while suboptimal, is not a statutory violation of § 4241(d)(1)'s four-month limit on the period of hospitalization.

### B. Mr. Little's presumptive 7-month pre-hospitalization delay violates neither the IDRA nor Mr. Little's Due Process rights.

The Court's interpretation of when the IDRA's four-month limitations period applies does not fully resolve the issue, however. Mr. Little has been in pre-hospitalization custody awaiting a bed at an appropriate medical facility for five months—longer than the time Congress provided for the hospitalization period under § 4241(d)(1). And still,

according to the government's own representations, Mr. Little will not likely be admitted to a suitable medical facility until June 2024. In all, this will result in a seven-month delay before his no-more-than-four-month period of hospitalization even begins. Although § 4241(d)'s four-month limit does not apply to this pre-hospitalization period, "[t]he Constitution does not permit any portion of a [person's] commitment under 18 U.S.C. § 4241(d) to last indefinitely." *Donnelly*, 41 F.4th at 1106. Indeed, over 50 years ago the Supreme Court forbade the indefinite detention of a person found incompetent to stand trial. *Jackson v. Indiana*, 406 U.S. 715, 731 (1972) ("indefinite commitment of a criminal defendant solely on account of his incompetency to stand trial does not square with the Fourteenth Amendment's guarantee of due process") Accordingly, the Court considers whether the projected seven-month delay in transferring Mr. Little to an appropriate medical facility for competency restoration treatment requires Court intervention.

The government contends that this projected seven-month "administrative delay" is not a Due Process violation and offers three reasons to support its claim. (Doc. 90 at 14-17.) First, the government argues that there is no Due Process violation simply because seven months is "much less time than the [three and a half] years at issue in *Jackson*." (*Id.* at 14.) Second, according to the government, the projected seven-month delay "does not rise to indefinite detention" because "it is a result of the strain on BOP resources required to conduct 18 U.S.C. § 4241(d)(1) evaluations" and not misconduct by the BOP. (*Id.*) And third, the government asserts, according to the rationale put forward in *United States v.*

9

*Ecker*,[2] there has been no Due Process violation because Mr. Little's detention has not exceeded the statutory maximum sentence available if he were to be convicted: up to 20 years in prison.[3]

In *Jackson*, Mr. Jackson was indefinitely committed to an Indiana facility based solely on his incompetence to stand trial. 406 U.S. at 719-20, 731. Mr. Jackson had been confined for three and a half years without demonstrating whether he would ever be able to fully participate in his trial. *Id.* at 738. The Supreme Court held that a person "who is committed solely on account of his incapacity to proceed to trial cannot be held more than the reasonable period of time necessary to determine whether there is a substantial probability that he will attain that capacity in the foreseeable future." *Id*. The Court continued that "if it is determined that the [person] probably soon will be able to stand trial, his continued commitment must be justified by progress toward that goal." *Id*.

This Court agrees with the government that Mr. Little's case is distinguishable from *Jackson* in at least one critical way: Mr. Jackson was detained for over three years, whereas Mr. Little has so far been detained for just over five months and is slated to soon begin his hospitalization period. Without discounting the length of Mr. Little's detention, the Court acknowledges that a seven-month delay is substantially shorter than the three-and-a-half-year detention Mr. Jackson endured.

---

[2] 30 F.3d 966 (8th Cir. 1994).
[3] Because the Court reaches its conclusion on other bases that better distill the heart of the dispute, the Court does not address this argument.

But the fact that Mr. Little has been in pre-hospitalization confinement for months rather than years does not necessarily foreclose the possibility an IDRA violation, at least according to *Donnelly*.[4] In addressing the interplay of the IDRA and the Due Process analysis of *Jackson*, the Ninth Circuit noted that although the IDRA did not have "a specific time limit for a pre-hospitalization commitment period, *Jackson* requires the duration of any such commitment to 'bear some reasonable relation' to its purpose." *Donnelly*, 41 F.4th at 1106 (citing *Jackson*, 406 U.S. at 738). The court observed that the purpose of such a pre-hospitalization commitment period is to "to allow the Attorney General time to identify a suitable facility and arrange for the [person's] transportation to that facility." *Id.* Although such a process may take some time, "to abide by *Jackson*, the duration of the pre-hospitalization commitment period must be limited to the time reasonably required to accomplish those tasks." *Id*. Without ruling on a "maximum allowable length of a pre-

---

[4] *Donnelly* is cited by both parties, and the Court agrees it serves as a useful roadmap—as have other Courts in this District. *See, e.g., United States v. Batton-Harris*, 22-cr-346, Doc. 34 (filed under seal) (D. Minn. Jan 5, 2024), *R. and R. adopted at* Doc. 38 (Feb. 7, 2024). That said, *Donnelly*'s analysis is far from straightforward. The Supreme Court's decision in *Jackson* served as the foundation for the Ninth Circuit's decision in *Donnelly*. *Jackson* involved the constitutional question of how long may the government detain a criminal defendant for interim competency proceedings without a final commitment decision. 406 U.S. at 738. Although the *Donnelly* court relied on *Jackson* to rule in Mr. Donnelly's favor, it did not find a constitutional violation. 41 F.4th at 1107-08. Rather, it based its decision on a statutory violation because Mr. Donnelly had been in pre-hospitalization custody longer than the IDRA allowed. 41 F.4th 1107-08. The wrinkle is that, as discussed above (and acknowledged by the *Donnelly* court), the IDRA does not have a specific time limitation for pre-hospitalization custody. Rather, the *Donnelly* court imposed one as a matter of constitutional interpretation. *Donnelly*, 41 F.4th at 1107-08. The Court need not determine whether to follow *Donnelly*'s analytical path in its entirety, since—at least at this time—Mr. Little cannot demonstrate that he qualifies for relief even under the modified-statutory approach of *Donnelly*, let alone the Due Process clause.

11

hospitalization commitment period" the court held that "the eight months [Mr.] Donnelly has waited to be hospitalized in a suitable facility plainly exceeds whatever period the statute conceivably allows." *Id.* at 1107-08.

Just as in *Donnelly*, the government asserts that the delay in transferring Mr. Little to a facility for treatment results from the strain on BOP resources required to meet the demands of § 4241(d). (Doc. 90 at 4-5.) The BOP acknowledges its "backlog problems" which are driven by a limited number of restoration sites, staffing levels, bed space, and increased need for restoration services over the years. (*Id.* at 4-5, 15-16.)  The government asserts that it has taken measures to decrease the pipeline backlog, including recruiting for additional forensic staff at the restoration sites and attempting to hire more forensic psychologists. (*Id.*) Despite the BOP's effort to alleviate the "backlog problems," these problems persist and will likely result in a seven-month delay in transferring Mr. Little to a suitable facility for competency restoration treatment.

The government represents to the Court that the BOP has made a reasonable effort to expedite Mr. Little's hospitalization while still ensuring he is transferred to the appropriate facility. According to the government, the BOP considered a number of facilities for Mr. Little, but ultimately concluded they were not appropriate to address Mr. Little's condition. (Doc. 90 at 5.) Accordingly, the BOP designated Mr. Little to the Federal Medical Center at Butner, North Carolina for his § 4241(d) restoration period, as this was the most appropriate facility in light of his history and diagnosis. (*Id.* at 5-6.) The government represents that it sought to accelerate Mr. Little's transfer, and also sought re-designation to a facility with bedspace, to no avail. (*Id.*)

12

Although Mr. Little has endured a months-long delay that would not occur under ideal circumstances, it does not appear that the delay stems from bad faith or misconduct by the BOP. But at bottom, the first question for this Court is *whether* Mr. Little's rights have been violated, before considering the degree of the government's culpability. And the answer to that first question—whether there has been a violation of Mr. Little's rights—is no, at least not yet. But Mr. Little's pre-hospitalization detention is on the horizon of being twice as long as his presumptive hospitalization period, fast approaching the same term that caused the *Donnelly* court to issue *sua sponte* injunction requiring that Mr. Donnelly be transferred to a hospital.[5] *Donnelly*, 42 F.4th at 1107. That could well happen here, too. But at this time, the Court finds that there has been no statutory or Due Process violation and therefore recommends that Mr. Little's Motion to Dismiss the Indictment be denied without prejudice. In order to ensure full compliance with the IDRA and to honor Mr. Little's Due Process rights, the government is directed to file updates under seal every two weeks from today's date, advising the Court on the status of Mr. Little's transfer.

## RECOMMENDATION

Accordingly, based on all the files, records, and proceedings above, **IT IS RECOMMENDED** that Mr. Little's Motion to Dismiss the Indictment (Doc. 83) be **DENIED**.

## ORDER

---

[5] Even if a violation is found, the extreme remedy of dismissal may not be warranted. *Donnelly*, 41 F.4th at 1107; *see also Jackson*, 406 U.S. at 738.

Accordingly, based on all the files, records, and proceedings above, **IT IS ORDERED** that the government shall file status updates under seal every two weeks advising the Court about the status of Mr. Little's transfer.

Date: April 26, 2024
          *s/Douglas L. Micko*
          DOUGLAS L. MICKO
          United States Magistrate Judge

## NOTICE

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals. Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed findings and recommendations within 14 days after being served with a copy" of the Report and Recommendation.

A party may respond to those objections within 14 days after being served a copy of the objections. *See* Local Rule 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in Local Rule 72.2(c).