UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Criminal No. 23-173 (ADM/DLM)

UNITED STATES OF AMERICA,

        Plaintiff,

    v.                        **GOVERNMENT'S POSITION REGARDING SENTENCING**

JACKIE RAHM LITTLE,

        Defendant.

Places of worship represent more than the brick and mortar they are fashioned with. They are more than the construct of the building, or the wirings within them. To many, they are places of refuge, enclaves of peace, spaces for community, and physical foundations for spirituality. When these sacred spaces are attacked, the damage goes far beyond the physical destruction or degradation of a building. Attacks create deep and lasting community trauma, erode the refuge of peace and sanctuary, and impact the religious community's sense of safety and stability. Attacking a place of worship by means of fire—an indiscriminate and uniquely destructive means of violence—makes Jackie Rahm Little's attempted arsons of two mosques all the more profound, and all the more deserving of a lengthy and appropriate term of imprisonment. Though there is significant mitigation for the Court to consider, the Government recommends the Court sentence Little to 70 months'

imprisonment. Considering the relevant sentencing factors set forth in 18 U.S.C. § 3553(a), such a sentence is sufficient, but not greater than necessary.

I.      **Offense Conduct.**

*April 23, 2023 Arson*

On April 23, 2023, at approximately 7:00 p.m., Little started a fire in one of the bathrooms of the Masjid Omar Islamic Center ("the Center"), located at 912 E 24th Street in Minneapolis, Minnesota. Surveillance footage captured Little, clad in a black jacket, black beanie, blue jeans, glasses, and blue medical face mask, carrying a brown paper bag.



Surveillance also revealed that Little entered the Center and then proceeded to a second-floor bathroom where he lit a cardboard box on fire while he was inside one of the bathroom stalls. An employee interrupted Little's crime and was able to chase Little from the building before the fire could spread.

However, Little left behind the burnt cardboard and a partially melted gas can as evidence of his attempt:



*April 24, 2023 Arson*

The next day, Little attacked the Masjid Al-Rahma, also known as the Mercy Islamic Center ("Mercy"). Mercy primarily operates as an Islamic Mosque for prayer and gathering. However, and pertinent here, Mercy also rents its lower level to a private childcare business.

At approximately 6:30 p.m., surveillance footage captured Little boarding city bus at the intersection of Washington Avenue and 6th Avenue North in Minneapolis. Little was again carrying an item—a car gasoline cannister—cloaked in a brown paper bag.



Little was observed exiting the bus in the vicinity of Mercy, and then entering Mercy at 6:52 p.m.

Given the time of day, only four adult males were present. Three of them were sitting in Mercy's front office, when the fourth male ran excitedly towards them and exclaimed that there was a fire within the building. Once the conflagration was confirmed, they called 911 and began evacuating the nearly *40 children* present in the childcare facility. Once everyone was safely evacuated, law enforcement and fire officials safely put out the fire.

4

In the aftermath of the fire, personnel from the Bureau of Alcohol, Tobacco, Firearms, and Explosives, as well as the Minneapolis Fire Department observed significant damage to a third-floor hallway, extending to the stairwells on both ends. A melted red plastic rectangular container, consistent in size, shape, and color to a commercially available plastic gas can, was located under some of the debris at the south end of the hallway. When officials picked up the object, the odor of gasoline was readily apparent.





The total damage for Little's crimes and agreed upon restitution is $378,022.59.

## II. Sentencing Guidelines Range.

On September 17, 2025, Little pleaded guilty to both counts in the Indictment which charged him with arson and damage to religious property. The PSR's Guidelines range calculation differs from what the parties anticipated. Based on an inadvertent misapplication of the grouping rules, the parties anticipated a higher Guidelines range (63-78 months) than the PSR calculates (60-63 months). Ultimately, however, the Government agrees that the Sentencing Guidelines calculations and the statutory terms of imprisonment contained in the PSR are accurate.

Therefore, the base offense level for Little's crimes of conviction is 24. PSR ¶ 16. A three-level enhancement applies because Little selected the Masjid Al-Rahma mosque as the object of the offense because of actual or perceived religious animus. PSR ¶ 18. With a three-level reduction for acceptance of responsibility, and a criminal history category of I, Little's advisory Guidelines range is 60-63 months' imprisonment.[1]

### III. <u>The Appropriate Sentence</u>.

The Guidelines range is the start, and not the end, of the analysis. *See e.g., United States v. Ruvalcava-Perez*, 561 F.3d 883, 886 (8th Cir. 2009) ("In sentencing a defendant, the district court should first determine the appropriate Guidelines range, then evaluate whether a traditional departure is warranted, and finally decide whether or not to impose a guideline sentence after considering all the § 3553(a) sentencing factors"). The Government has considered the applicable 3553(a) sentencing factors and recommends a modest, seven-month upward variance, to 70 months' imprisonment as an appropriate sentence in this case. Herein, the Government provides the following as reasons for the Court to adopt such a recommendation.

First, the nature and circumstances of Little's crimes are reprehensible. Arson is an extraordinarily dangerous crime, largely so because of its

---

[1] Revised from 51-63 months' imprisonment by operation of the statute/mandatory minimum term of imprisonment.

7

unpredictability. The smallest fire has the potential to cause catastrophic loss of life, enormous property damage (which one arson did in this case), and long-term trauma. The fact that Little's actions did not cause actual injury or death militates only so far towards leniency. As this Court knows, a lack of physical harm to any victim in an arson case only reflects chance, timing, and the intervention of individuals quick to not only spot the fire, but to also whisk people to safety.

Moreover, the object and target of Little's crimes must be considered within the context of the nature and circumstances of the offense. As previously stated, a place of worship is not merely real property; it symbolizes much more. It is a place of worship and spiritual expression. It is a relief from the difficulties of the world, as well as an answer for some of those same difficulties. It is a center for counseling, charity, refuge, and support. It is, often times, an extension of the family. All told, it is a sacred space that society—and our Constitution—readily recognizes as deserving of special protection. Little's conduct strikes at the core of that protection and at religious liberty. Courts have long acknowledged that crimes against places of worship inflict largely intangible harms that often exceed economic damage. These harms can include fear, alienation, and the chilling of religious practice; harms that take far longer to heal than the installation of new drywall or flooring. These crimes

communicate a message—not just to the victim mosques, but to all who wish to practice their religion and spirituality without fear of harm and criminality.

A seven-month upward variance here makes sense for several reasons. First, Little's crimes of conviction relate to one arson; the April 24, 2023 arson at Mercy. As consideration for his guilty plea, the Government agreed to not charge Little with the April 23, 2023 arson. If charged, Little would likely have been subject to a consecutive mandatory minimum 60-month sentence. A seven-month upward variance to account for a separate arson victim is not an unreasonable ask.

Additionally, approximately 40 children were placed in harm's way when Little decided to commit his crimes. Places of worship are active spaces. Not only are services held, but there are meetings, rehearsals, weddings, and, in this case, childcare. Again, the fact that no child—or no one—was injured does not lessen Little's culpability. Rather, it underscores how many were vulnerable at the time of Little's attacks and how close this came to unimaginable tragedy.

One of the Government's foremost concerns in assessing the appropriate sentence in this case is the need for deterrence. While the Government acknowledges that it is unlikely that Little, if compliant with his medication and mental health regimen, will ever attempt to burn down another mosque, it is imperative that the Court send a message of deterrence to the community

9

at large. It is not an exaggeration to say that hate-motivated crimes have risen drastically in the United States in recent years. From December 2020 to December 2025, there have been 56,990 incidents of hate-motivated crime. As the chart below shows, religion-motivated crime is the second most prevalent hate-motivating factor during that time span.[2]



As the map below hammers home, mass shootings, bombings/arsons, and vehicle rammings directed at religious congregations have taken place from coast to coast.[3]

---

[2] Source: United States Federal Bureau of Investigation. https://cde.ucr.cjis.gov/LATEST/webapp/#/pages/explorer/crime/hate-crime

[3] Source: CISA.gov. https://www.cisa.gov/sites/default/files/publications/Mitigating%2520Attacks%2520on%2520Houses%2520of%2520Worship%2520Security%2520Guide_508_0.pdf



These attacks include one on the Sikh Temple in Oak Creek, Wisconsin on August 5, 2012, which resulted in six deaths. Other, even more horrible attacks followed, including the mass shooting at the Tree of Life synagogue in Pittsburgh, in which eleven victims were killed and six others, including four responding police officers, were injured. Similarly, in the Poway Synagogue mass shooting in southern California, one person was killed, and three others, including the synagogue's rabbi, were injured.

As to attacks on mosque specifically, even just in Minnesota, incidents include: (1) an attack at a mosque in northeast Minneapolis in November 2019, in which a glass door was broken and the attacker shouted at a mosque

member inside;[4] (2) strips of bacon being deposited at the front door of a mosque in Rochester in June of 2018;[5] and (3) a teenage girl entering the Da'wah mosque in St. Paul in July 2016, to find the mosque had been broken into and notes left reading "Muhammad was a rapist" and "F**k Islam."[6] Little's attacks on two mosques, in short, are crimes in which the need for a sentence that embodies general and specific deterrence is critical to send the message that the justice system does not tolerate hate crimes directed at mosques, and that a Muslim's right to safely practice their faith is protected in the same way all religious worship is protected in the United States.

Lastly, the Government is cognizant of the significant role mental health, all detailed within the PSR, played in Little's crimes. And his history and characteristics provide significant mitigation for the Court to consider. The Government believes that its request of 70 months' imprisonment, and agreement to not prosecute other conduct, adequately balances Little's mental health issues at the time he committed these crimes with the seriousness of the crimes committed. Moreover, leadership of the mosques have expressed

---

[4] *Attack on Minneapolis Mosque Comes as Reports of Hate Crimes Drop,* Star Tribune, (Nov. 12, 2019), http://www.startribune.com/attack-on-minneapolis-mosque-comes-as-reports-of-hate-crimes-drop/564818952/?refresh=true.

[5] *Police Investigate After Bacon is Left at Rochester Mosque,* MPR News (Jun. 25, 2018), https://www.mprnews.org/story/2018/06/25/police-investigate-bacon-left-at-rochester-mosque.

[6] *Hate Message Allegedly Left at St. Paul Mosque,* CBS Minnesota, (Jul. 26, 2016), http://minnesota.cbslocal.com/2016/07/26/st-paul-mosque-hate-speech.

their satisfaction with the ask, wanting to focus on restorative justice rather than overly punitive punishments. The victims' ability to forgive their attackers and use this moment to promote mercy has tempered the Government's request.

After Little is released from imprisonment, the Government recommends the Court utilize supervised release as a tool to bolster Little's chances at success. Supervised release "is a unique method of post-confinement supervision," *Gozlon-Peretz v. United States*, 498 U.S. 395, 407 (1991), that "fulfills rehabilitative ends, distinct from those served by incarceration." *United States v. Johnson*, 529 U.S. 53, 59 (2000). It "is not punishment in lieu of incarceration." *United States v. Granderson*, 511 U.S. 39, 50(1994). Rather, "congressional policy in providing for a term of supervised release after incarceration is to improve the odds of a successful transition from the prison to liberty," *Johnson v. United States*, 529 U.S. 694, 708-09 (2000).

Little's mental health history demonstrates that three years of supervised release, the maximum time period allowed here, is appropriate under these circumstances. Such an amount of time will help to adequately assess Little's continued mental health needs, while also securing a foundation for success in the years after supervised release has been completed. Further, a structured environment provided by U.S. Probation could also decrease Little's chances of recidivism. In the absence of any positive behavioral

changes, or should Little's mental health deteriorate, lengthy supervision can adequately inform the Court and potentially provide further public protection. To help address Little's issues, and for the purpose of successful supervision, the Government is supportive of the supervised release conditions outlined in the PSR. PSR ¶¶ 98-104.  In addition, the Government is supportive of other conditions the Court deems appropriate.

## CONCLUSION

All told, the Government respectfully requests the Court sentence Jackie Rahm Little to 70 months' imprisonment. Based on the considerations outlined in this Memorandum, such a sentence accomplishes federal sentencing goals of being sufficient, but not greater than necessary.

Dated: January 7, 2026                     Respectfully Submitted,

                                           DANIEL N. ROSEN
                                           United States Attorney

                                           /s/ *Evan B. Gilead*
                                           BY: EVAN B. GILEAD
                                           Assistant United States Attorney
                                           Attorney ID No.: 1601283 DC